REGAN, Judge.
The plaintiff, Harry Lee Boss, filed this suit against the defendant, The Travelers Insurance Company, the workmen’s compensation insurer of Boh Brothers Construction Company, the employer, endeavoring to recover the sum of $13,685.00, representing workmen’s compensation for total and permanent disability which he asserts was incurred as a result of an accident which occurred within the course of his employment. He also requested the imposition of penalties and attorney’s fees predicated upon the hypothesis that the defendant arbitrarily refused to pay compensation to him.
The defendant answered and denied the pertinent accusations contained in the plaintiff’s petition.
The lower court rendered judgment in favor of the plaintiff, awarding him compensation at the rate of $35.00 per week for a period not to exceed 300 weeks, subject to a credit for compensation and medical expenses previously paid; however, it denied his request for penalties and attorney’s fees.
From that judgment, only the plaintiff has prosecuted an appeal, which is limited to that part of the judgment which *629 denied his request for the imposition of penalties and attorney’s fees.
Obviously, the only question posed for ■our consideration is whether the defendant was guilty of arbitrary and capricious conduct in failing to make compensation payments to the plaintiff after September 21, 1964, as the following factual revelation -will disclose.
The record reveals that the plaintiff was injured on July 14, 1964. He was removed from the situs of the accident to Flint-Goodridge Hospital and remained there under the care of Dr. Paul G. Reyes from July 14, to August IS, 1964. Thereafter, he was treated as an outpatient until bis discharge therefrom, which occurred •on September 21, 1964, when all compensation payments were discontinued.
During the course of Dr. Reyes’ treat-ment in Flint-Goodridge Hospital he had the benefit of consultation with two specialists in orthopedics and a neurosurgeon who had previously evaluated the plaintiff’s injuries. In addition, he examined ■the plaintiff on three occasions between August 15, and September 21, 1964. In ■the course of the last examination, Dr. Reyes concluded that he possessed full flexion of his back, no muscle spasm, -normal reflexes in the lower extremities, .and negative results in leg raising tests. 'These findings, together with the advice ■obtained from consultation with the three •specialists, prompted Dr. Reyes to discharge him on September 21 as fit to resume 'his former occupation.
On August 27, 1964, the plaintiff, without the knowledge of Dr. Reyes, consulted one or more physicians attached to the staff of the Veterans Administration Hospital, where a lumbar myelogram was made, which revealed a disc defect at the level • of the fourth lumbar interspace. In consequence thereof, a laminectomy was performed on November 10, 1964. Thereafter, ■on April 26, 1965, a myelogram was again -taken and as a result of another positive finding, a second laminectomy occurred on May 11, 1965.
The two laminectomies performed at the Veterans Administration Hospital constitute the primary basis for the plaintiff’s demand for penalties and attorney’s fees. He insists that the defendant is guilty of arbitrary and capricious refusal to pay because it did not resume compensation payments upon receipt of a letter from his attorney, dated December 8, 1964, informing the defendant that plaintiff had undergone surgery for “herniated nucleus pulposus, L4-L5”.
The salient feature of this sequence of events is the fact that the letter from the plaintiff’s attorney was transmitted to the defendant after the plaintiff had filed this suit which occurred on November 16, 1964, wherein the only reference to further treatment undergone by the plaintiff was the nebulous assertion that the “petitioner is still under treatment for the injuries which he suffered on the 14th day of July, 1964”.
We are convinced that under these facts the defendant insurer was reasonable in refusing to resume compensation payments to the plaintiff. It had received no prior notification of the pending operation before suit was filed, when it could easily have had the plaintiff re-examined in order to obtain a comprehensive evaluation of his present condition. When it did receive notice, all opportunity for the defendant to have the plaintiff’s condition evaluated before institution of a suit was terminated, and it was then entitled to wait until evidence was adduced at the trial hereof to determine that a causal connection existed between the accident and the condition which provoked the laminectomies. Obviously, the defendant was justified in relying on the specific advice of four physicians.
It is well settled that penalties and attorney’s fees will not be imposed upon an insurer unless the facts warranting such *630 imposition are clear and convincing. In very doubtful cases, the penalty provisions of the statute should not be invoked. This is especially true when the circumstances involving the defendant’s non-payment disclose that it was absolutely unaware of what had occurred to the plaintiff following his discharge on September 21, 1964, until after suit was filed by him.
Of course, it is unfortunate that medicine is an inexact science, and that the treating and consulting physicians who examined the plaintiff in Flint-Goodridge Hospital may therefore have erred in their evaluation of his condition; however, the fault therefor certainly cannot be placed upon the defendant who acted upon the advice of experts in the field of orthopedics and neurosurgery.
For the foregoing reasons, the judgment of the lower court is affirmed. The plaintiff is to pay all costs of this appeal, and the defendant is to pay all other costs incurred herein.
Affirmed.